**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

ZUFFA, LLC,

                    Plaintiff,

      v.

DERICK CUEBAS, et al.,

                    Defendants.

CIVIL ACTION NO. 3:24-CV-01269

(MEHALCHICK, J.)

## MEMORANDUM

Pending before the Court is motion for default judgment of Plaintiff Zuffa, LLC doing business as Ultimate Fighting Championship, ("Plaintiff"), filed pursuant to Fed. R. Civ. P. 55 against Defendants Derick Cuebas ("Cuebas") and 1 Cue Cigar Lounge, LLC ("Cue") (together, "Defendants"). (Doc. 12). On July 29, 2024, Plaintiff initiated this action by filing a complaint against Defendants. (Doc. 1). On October 16, 2024, the Clerk of Court issued an entry of default against Defendants. (Doc. 8). On June 17, 2025, the Court conducted a hearing to determine Plaintiff's damages. Defendants did not appear. For the following reasons, Plaintiff's motion for default judgment is **GRANTED**. (Doc. 12).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following factual summary is taken from the complaint, and for the purposes of the instant motion, is taken as true. (Doc. 1). Plaintiff is a Nevada corporation which owns the broadcast rights to "UFC 285 Jones vs. Gane PPV Broadcast" (the "Broadcast"). (Doc. 1, ¶¶ 5-6). The Broadcast was an Ultimate Fighting Championship ("UFC") fight which occurred on March 4, 2023. (Doc. 1, ¶ 6). Plaintiff owns the rights to the Broadcast including the rights to "all undercard matches and the entire television Broadcast, via encrypted closed[-]circuit television, encrypted satellite, radio signals and/or digital streaming

technology." (Doc. 1, ¶¶ 5-6). Under Plaintiff's rights to the Broadcast, a commercial business cannot show the Broadcast without paying Plaintiff a commercial use fee. (Doc. 1, ¶ 21). Cue is a commercial business located in East Stroudsburg, Pennsylvania. (Doc. 1, ¶¶ 9, 12-13). Cuebas is the manager and operator of Cue. (Doc. 1, ¶¶ 9, 12-13). On March 3, 2023, Defendants posted a Facebook advertisement stating they would be playing the Broadcast at Cue on March 4, 2023. (Doc. 1, ¶ 14). Defendants showed the Broadcast at Cue for a commercial benefit without paying Plaintiff the commercial use fee. (Doc. 1, ¶¶ 22-25).

On July 29, 2024, Plaintiff initiated this action against Defendants alleging violations of the Communications Act of 1934 and other copyright laws of the United States. (Doc. 1). On September 3, 2024, Plaintiff filed affidavits of service showing personal service on Defendants. (Doc. 5; Doc. 6). On October 9, 2024, Plaintiff filed a request for entry of default against Defendants which the Clerk of Court entered on October 16, 2024. (Doc. 7; Doc. 8). On February 24, 2025, Plaintiff filed a motion for default judgment and filed a brief in support on February 25, 2025. (Doc. 12; Doc. 14). Plaintiff seeks an award of up to $51,665 in damages against Defendants under a theory of joint and several liability. (Doc. 14, at 18-19).

On June 17, 2025, the Court held a hearing on the motion for default judgment. Defendants did not appear. To date, no counsel has entered an appearance on Defendants' behalf and Defendants have not filed any documents with the Court in connection with this case.

## II.   LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure. An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b). See 10A Charles Alan

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (3d ed. 2007) (noting that, "[p]rior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)"). Once the Clerk of Court has entered a default, the party seeking the default may then move the Court to enter a default judgment under Rule 55(b)(2). Entry of default does not entitle a claimant to default judgment as a matter of right. 10 James Wm. Moore et al., *Moore's Federal Practice* § 55.31 (Matthew Bender ed. 2010). Indeed, it is well settled that decisions relating to the entry of default judgments are committed to the sound discretion of the district court. *See Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987).

Three factors control the exercise of the district court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (*citing United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). Even so, a court may "enter a default judgment based solely on the fact that the default occurred" without considering the *Chamberlain* factors if the defendant has been properly served but fails to appear, plead, or defend an action. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

"A finding that default judgment is appropriate, however, is not the end of the inquiry." *Martin v. Nat'l Check Recovery Servs., LLC*, No. 1:12-cv-01230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016). Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action." *See* Wright et al., at § 2688; *see also Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F.

Supp. 2d 537, 541 (E.D. Pa. 2008) (stating that, "before granting a default judgment, the Court must ... ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law'" (citations omitted)). In conducting this inquiry, "the well-pleaded, factual allegations of the complaint ... are accepted as true and treated as though they were established by proof." *See E. Elec. Corp. of N.J. v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citation omitted). While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's factual allegations or legal conclusions relating to the amount of damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

## III.   DISCUSSION

Plaintiff moves for default judgment and requests up to $51,665 in damages under a theory of joint and several liability. (Doc. 14, at 18-19). The Court will first address the Court's jurisdiction over this matter. The Court will then access whether default judgment is warranted. Finally, the Court will assess damages.

### A.   THE COURT HAS JURISDICTION.

Although Defendants have failed to make any appearance or challenge jurisdiction, "when a default judgment is requested, a court is required to make a threshold determination regarding any jurisdictional defects." *See Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015) (nonprecedential). The Court finds that Plaintiff properly alleges subject matter jurisdiction and personal jurisdiction over Defendants.

Regarding subject matter jurisdiction, Plaintiff brings his claims pursuant to federal copyright laws, and accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1331. Turning to personal jurisdiction, Cuebas is domiciled in Pennsylvania and

Cue is located in Pennsylvania. (Doc. 1, ¶¶ 7, 13). Accordingly, the Court has general jurisdiction over Defendants. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (stating "the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home"). There are no jurisdictional defects preventing the Court from granting this motion.

### B. DEFAULT JUDGMENT IS WARRANTED.

The Court finds that Plaintiff is entitled to default judgment. Before granting default judgment, "the Court must 'ascertain whether []the unchallenged facts constitute a legitimate cause of action.'" *Adlife Mktg. & Commc'ns Co. v. Ad Post Graphics Media Mktg., Inc.*, 708 F. Supp. 3d 567, 573 (M.D. Pa. 2023) (quoting *Broad. Music, Inc.*, 555 F. Supp. 2d at 541). Plaintiff requests default judgment on his Communications Act claim under 47 U.S.C.A. § 605 ("Section 605") and on his copyright infringement claim under 17 U.S.C.A. § 501 ("Section 501") and 17 U.S.C.A. § 504 ("Section 504").[1] (Doc. 14, at 18). The Court will address each claim in turn.

Plaintiff alleges Defendants violated Section 605 by intercepting the Broadcast and playing it at Cue. (Doc. 1, ¶¶ 16-32). "[Section] 605, holds any person or individual liable for the unauthorized interception and publication of airborne satellite cable transmissions for non-private viewing." *J&J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018). To state a claim under Section 605, a plaintiff must show "(1) interception of a satellite

---

[1] The complaint raises Four Counts. (Doc. 1, ¶¶ 16-57). However, Plaintiff's only request default judgment on Counts I and III. (Doc. 14, at 18). Accordingly, the Court only considers Counts I and III. (Doc. 1, ¶¶ 16-32, 40-48).

transmission or broadcast, (2) lack of authorization, and (3) publication." *J&J Sports Prods., Inc.*, 757 F. App'x at 95; *see also G & G Closed Cir. Events, LLC v. La Famosa, Inc.*, No. CV 19-13025 (FLW), 2020 WL 3129540, at *3 (D.N.J. June 12, 2020). Further, when a plaintiff alleges an individual defendant is vicariously liable with a corporate defendant under Section 605, the plaintiff must show the individual defendant:

> (1) has the right and ability to supervise the violative activity, although he need not actually be supervising, because he need not know of the violative activity, and (2) has a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity.

*J&J Sports Prods., Inc.*, 757 F. App'x at 95 (citing *Joe Hand Promotions, Inc. v. Yakubets*, 3 F.Supp.3d 261, 296 (E.D. Pa. 2014)). Here, Plaintiff alleges Defendants intercepted the Broadcast, did not pay the requisite commercial fee to have authorization to show the Broadcast, and showed the Broadcast at Cue. (Doc. 1, ¶¶ 19, 21-25). Further, Plaintiff alleges Cuebas was the manager of Cue and received a financial benefit from his operation of Cue. (Doc. 1, ¶¶ 8-10). As such, Plaintiff has sufficiently stated a claim under Section 605. *See J&J Sports Prods., Inc.*, 757 F. App'x at 95; *see also G & G Closed Cir. Events, LLC*, 2020 WL 3129540, at *3; *see also Zuffa, LLC v. Perris*, No. 2:19-CV-00938, 2020 WL 502645, at *3 (W.D. Pa. Jan. 31, 2020) (finding a plaintiff stated a claim under Section 605 by alleging a bar showed a UFC fight without authorization).

Turning to Plaintiff's copyright infringement claim, Plaintiff alleges Defendants are liable for copyright infringement because Plaintiff had the rights to the Broadcast and Defendants showed it at Cue without authorization. (Doc. 1, ¶¶ 40-48). "[T]o establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc.*

*v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991); *see also Adlife Mktg. & Commc'ns Co.*, 708 F. Supp. 3d at 574. "Copying is a 'shorthand reference to the act of infringing any of the copyright owner's ... exclusive rights set forth at 17 U.S.C. § 106.' Section 106 provides in pertinent part that 'the owner of copyright under this title has the exclusive rights to do and to authorize. . . reproduc[tion] [of] the copyrighted work.'" *Adlife Mktg. & Commc'ns Co.*, 708 F. Supp. 3d at 574 (citations omitted). A defendant who plays or shows a copyrighted work at a commercial venue without authorization infringes on the copyright. *See Broad. Music, Inc.*, 555 F. Supp. 2d at 541 (finding a resort infringed on a copyright by having copyrighted songs performed without authorization); *see also Zuffa, LLC*, 2020 WL 502645, at *3 (finding a bar infringed on a copyright by showing a UFC fight without authorization).

Here, Plaintiff alleges he owns the exclusive rights to the Broadcast. (Doc. 1, ¶¶ 6, 17, 43). Plaintiff further alleges Defendants unlawfully obtained the Broadcast and publicly showed it without authorization. (Doc. 1, ¶¶ 43-45). Accordingly, Plaintiff has adequately stated a claim for copyright infringement. *See Broad. Music, Inc.*, 555 F. Supp. 2d at 541; *see also Zuffa, LLC*, 2020 WL 502645, at *3. The Court is thus satisfied that the unchallenged facts constitute a legitimate cause of action for both of Plaintiff's claims. *See Adlife Mktg. & Commc'ns Co.*, 708 F. Supp. 3d at 573.

The Court next turns to the *Chamberlain* factors. 210 F.3d at 164. Under *Chamberlain* the Court must consider, "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." 210 F.3d at 164. These factors weigh in favor of entering default judgment against Defendants.

First, Plaintiff will be prejudiced if the Court declines to enter default judgment. This prejudice stems from the fact that Plaintiff would be unable to otherwise obtain relief or pursue their case due to Defendants' failure to respond. *See Fridline v. Millennia Tax Relief*, LLC, 727 F. Supp. 3d 517, 522 (M.D. Pa. 2024) (stating "Plaintiff would be prejudiced [if default is denied] by his 'current inability to proceed with [his] action due to Defendant['s] failure to defend'" (quoting *Broad. Music, Inc. v. Kujo Long, LLC*, No. 1:14-CV-00449, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014)); *see also Adlife Mktg. & Commc'ns Co.*, 708 F. Supp. 3d at 573 (stating "[a]bsent the default judgment, Plaintiff will be faced with an indefinite, and possibly permanent, delay in the adjudication. . . and is left with no alternative means to vindicate its claim against the defaulting parties").

Second, Defendants do not appear to have a litigable defense. "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Here, the court cannot ascertain a litigable defense because Defendants have not "responded to the allegations and, therefore, have failed to assert a defense."*Adlife Mktg. & Commc'ns Co.*, 708 F. Supp. 3d at 573; *see also Fridline*, 727 F. Supp. 3d at 522.

Third, Defendants' delay is due to culpable conduct because they have failed to respond despite receiving service of process months ago. *See Fridline*, 727 F. Supp. 3d at 522 (finding culpability where a Defendant received service of process but failed "to respond or appear in this action. . . [and] offered no explanation for its failure to engage in the litigation"). "In [the] context [of a default] culpable conduct means action taken willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-124 (3d Cir. 1983). The record reflects

Defendants were served on August 31, 2024. (Doc. 5; Doc. 6). Despite this, Defendants have failed to respond to the complaint or take any other action which "amounts to deliberate and willful conduct." *Adlife Mktg. & Commc'ns Co.*, 708 F. Supp. 3d at 573; *see also Fridline,* 727 F. Supp. 3d at 522 (stating "[h]aving received service, Defendant has yet to respond or appear in this action. Because Defendant has offered no explanation for its failure to engage in the litigation, the Court finds that Defendant is culpable").

This all considered, the Court is satisfied that the *Chamberlain* factors weigh in favor of entering default judgment in Plaintiff's favor. 210 F.3d at 164. Accordingly, the Court **GRANTS** Plaintiff's motion for default judgment. (Doc. 12).

    C.  T̲h̲e̲ ̲C̲o̲u̲r̲t̲ ̲w̲i̲l̲l̲ ̲a̲w̲a̲r̲d̲ ̲P̲l̲a̲i̲n̲t̲i̲f̲f̲ ̲$̲6̲,̲7̲9̲5̲ ̲i̲n̲ ̲d̲a̲m̲a̲g̲e̲s̲.

Having determined that Plaintiff is entitled to the entry of default judgment, the Court next evaluates Plaintiff's request for up to $51,665 in damages. (Doc. 14, at 18-19). Plaintiff requests the Court find Defendants jointly and severally liable for up to $10,000 in statutory damages under Section 605, up to $15,000 for willful violation of Section 605, up to $10,000 for copyright infringement under Section 504, up to $15,000 for willful infringement on Plaintiff's copyright under Section 504, and $1,665 in costs and fees pursuant to 17 U.S.C.A. § 505 ("Section 505"). (Doc. 14, at 18-19). The Court will first address Plaintiff's Section 605 claims, then turn to Plaintiff's copyright infringement claims, and then assess Plaintiff's request for costs and fees.

      **1.  The Court will Award Plaintiff $1,095 in Section 605 Statutory Damages.**

Plaintiff seeks up to $10,000 in statutory damages under Section 605. (Doc. 14, at 10, 18-19). Under Section 605, Plaintiff may recover "a sum of not less than $1,000 or more than $10,000" in statutory damages. 47 U.S.C.A. § 605 (e)(C)(i)(II). While assessing defaults,

courts generally base Section 605 statutory damage determinations on the amount of money a plaintiff would have received had the defendants paid their licensing fee. *See G & G Closed Cir. Events, LLC*, 2020 WL 3129540, at *4 (awarding plaintiff the amount they would have received had defendants paid the licensing fee); *see also Zuffa, LLC*, 2020 WL 502645, at *4 (basing damages off of both the amount plaintiffs would have received had defendants paid the licensing fee and the high viewership of the UFC fight); *see also Joe Hand Promotions, Inc. v. Concrete City Cafe Inc.,* No. CV 3:22-251, 2023 WL 6461244, at *4 (M.D. Pa. Sept. 29, 2023) (awarding statutory fees based off the licensing fee).

Here, the Court will not award Plaintiff the maximum damages allowed under Section 605 and instead will follow "the practice followed by other courts, where the plaintiff is awarded 'the license fee the defendant, based on the maximum capacity, would have paid if it had legally purchased the event.'" *Zuffa, LLC*, 2020 WL 502645, at *4 (*quoting Zuffa, LLC v. Al-Shaikh*, No. CIV.A. 10-00085-KD-C, 2011 WL 1539878, at *7 (S.D. Ala. Apr. 21, 2011)); *see also G & G Closed Cir. Events, LLC*, 2020 WL 3129540, at *4; *see also Joe Hand Promotions, Inc,* 2023 WL 6461244, at *4. According to Plaintiff, the licensing fee for Cue would have been $1,095. (Doc. 12-9, at 2; Doc. 12-10; Doc. 12-12, at 2; Doc. 14, at 14). Accordingly, the Court will award statutory damages of $1,095 under a theory of joint and several liability.

### 2. The Court will Award Plaintiff $3,285 in Section 605 Enhanced Damages

Plaintiff requests an award of $15,000 in enhanced damages pursuant to Section 605. (Doc. 14, at 18-19). Section 605 allows plaintiffs to recover enhanced damages of up to $100,000 if a defendant willfully violates the Section 605 for financial gain. 47 U.S.C.A. § 605 (e)(c)(ii). The Third Circuit has not established a test for enhanced damages under Section 605, however, courts in this circuit generally consider "several factors: (1) the number of

violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge." *Zuffa, LLC*, 2020 WL 502645, at \*5 (citing *Joe Hand Promotions, Inc. v. McBroom*, No. 5:09-CV-276(CAR), 2009 WL 5031580, at \*5 (M.D. Ga. Dec. 15, 2009); *see also G & G Closed Cir. Events,* 2020 WL 3129540, at \*5 (articulating the same test); *see also J&J Sports Prods., Inc. v. Old Bailey Corp.*, No. 18CV8829KSHCLW, 2019 WL 4267856, at \*4 (D.N.J. Sept. 9, 2019) (same). Where a defendant is not a repeat offender, courts generally award enhanced damages of three times the statutory damages. *See Zuffa, LLC*, 2020 WL 502645, at \*5 (awarding enhanced damages of three times the statutory damages where a defendant was a first time offender); *see also G & G Closed Cir. Events,* 2020 WL 3129540, at \*5 (same); *see also J&J Sports Prods.*, 2019 WL 4267856, at \*4 (awarding enhanced damages of three times the statutory damages where a defendant had only violated Section 605 once before because one violation was insufficient to show defendant was a repeat offender).

Here, Defendants have admitted by default that they willfully violated Section 605. *See Zuffa*, 2020 WL 502645, at \*4. Turning to the relevant factors for determining enhanced damages, there are no allegations in the complaint that Defendants are repeat offenders. It is also unclear from the complaint what Defendants' unlawful gains were or if Defendants collected a cover charge. Defendants did advertise their showing of the Broadcast. (Doc. 1, ¶ 14). Finally, Plaintiff's financial losses were $1,905. (Doc. 12-9, at 2; Doc. 12-10; Doc. 12-12, at 2; Doc. 14, at 14). Courts addressing similar circumstances have awarded enhanced damages of three times the awarded statutory damages. *See Zuffa, LLC*, 2020 WL 502645, at \*5; *see also G & G Closed Cir. Events,* 2020 WL 3129540, at \*5; *see also J&J Sports Prods.*, 2019

WL 4267856, at *4. The Court will follow this approach and award enhanced damages of $3,285 under a theory of joint and several liability.

### 3. The Court will Award Plaintiff $750 Under Section 504.

Plaintiff requests up to $10,000 in statutory damages and up to $15,000 in enhanced damages under Section 504. (Doc. 14, 18-19). Section 504 allows courts to award statutory damages awards of "not less than $750 or more than $30,000" for copyright infringement. 17 U.S.C.A. § 504 (c)(1). Section 504 also allows courts to award up to $150,000 in enhanced damages for willful copyright infringement. 17 U.S.C.A. § 504 (c)(2). Courts have discretion when determining damages for copyright infringement. *Adlife Mktg. & Commc'ns Co.*, 708 F. Supp. 3d at 577. Federal courts have taken the view that where a plaintiff seeks damages under both Section 605 and Section 504, courts should consider whether the award of damages under Section 605 "sufficiently compensates [the plaintiff] for the statutory violations committed by the Defendants and deters future violations." *Zuffa, LLC v. Perris*, 2020 WL 502645, at *6; *see also Joe Hand Promotions, Inc. v. Aguilar*, No. TDC-19-0458, 2019 WL 4071776, at *4 (D. Md. Aug. 29, 2019), *report and recommendation adopted*, No. CV TDC-19-0458, 2019 WL 5588857 (D. Md. Sept. 20, 2019); *see also Joe Hand Promotions, Inc. v. Garcia-Nunez*, No. 6:18-CV-01452-MC, 2019 WL 2437456, at *3 (D. Or. June 11, 2019); *see also Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389 (JPO), 2019 WL 3050852, at *6 (S.D.N.Y. July 12, 2019). Where an award of damages under Section 605 adequately redresses a plaintiff's injuries, courts should substantially reduce the plaintiff's damages under Section 504. *Zuffa, LLC v. Perris*, 2020 WL 502645, at *6 (awarding plaintiff the statutory minimum damages of $750 under section 504); *see also Joe Hand Promotions, Inc.*, 2019 WL 4071776, at *4 (same); *see also Garcia-Nunez*, 2019 WL 2437456, at *3 (denying damages under Section

504); *see also Levin*, 2019 WL 3050852, at *6 (reducing plaintiff's request for damages under Section 504 by eighty percent).

Here, Plaintiff's actual injuries were $1,095 in licensing fees. (Doc. 12-9, at 2; Doc. 12-10; Doc. 12-12, at 2; Doc. 14, at 14). As discussed *supra*, the Court is awarding Plaintiff damages in that amount plus an additional $3,285 in enhanced damages under Plaintiff's Section 605 claim. Accordingly, the Court will follow the Western District of Pennsylvania's approach and only award Plaintiff the Section 504 statutory minimum of $750 in statutory damages under a theory of joint and several liability. *Zuffa, LLC*, 2020 WL 502645, at *6. The Court will not award enhanced damages under Section 504.

### 4.  The Court will Award Plaintiff $1,665 in Costs and Fees.

Plaintiff requests $1,665 in costs and fees under 17 U.S.C.A. § 505 ("Section 505"). (Doc. 14, at 18-19). Where a court finds a defendant liable for copyright infringement, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C.A. § 505. Courts will grant requests for costs and fees under Section 505 where the defendant fails to appear, and the plaintiff submits evidence of their costs and fees. *See Adlife Mktg. & Commc'ns Co.*, 708 F. Supp. 3d at 579 (awarding costs and fees under Section 505 where defendants failed to appear, and plaintiff presented evidence of their costs and fees); *see also Grant Heilman Photography, Inc. v. Gallagher*, No. 3:23-CV-1129, 2024 WL 666147, at *5 (M.D. Pa. Feb. 16, 2024) (same).

Here, the docket reflects Plaintiff paid a filing fee of $405. (Doc. 1). Further, Plaintiff has provided invoices showing it paid $510 in service fees and $750 in audit fees. (Doc. 12-7). These fees add up to Plaintiff's requested $1,665. (Doc. 14, 18-19). Defendants have also failed to appear. Thus, the Court will grant Plaintiff's request for costs and fees under Section 505.

*See Adlife Mktg. & Commc'ns Co.*, 708 F. Supp. 3d at 579 ; *see also Grant Heilman Photography, Inc.*, 2024 WL 666147, at *5. The Court will award Plaintiff $1,665 in fees under a theory of joint and several liability.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion for default judgment is **GRANTED**. (Doc. 12). Judgment is entered in favor of Plaintiff and against Defendants in the amount of $6,795 under a theory of joint and several liability. The Clerk of Court shall mark this matter as **CLOSED**. An appropriate order follows.

Dated: June 17, 2025                                    *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States District Judge**